UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ESTATE OF JAMES EDWARD
STOKES, JR.,

Case No. 2:26-cv-01010

      Plaintiff,

   v.

CITY OF MILWAUKEE, PETER
KNOX, JEFFREY NORMAN, SHANE
DOUGHTY, BRETT STEGERWALD,
ANDREW FUERTE, and ALEX
BARTOSHEVICH,

      Defendants.

NOW COMES Plaintiff Estate of James Edward Stokes, by Special Administrator Kina King, by its attorneys, THE SULTON LAW FIRM LLC, by Attorney William F. Sulton, and files this complaint against Defendants City of Milwaukee, Peter Knox (Tow Lot Manager), Jeffrey Norman (Chief of Police), Shane Doughty, Brett Stegerwald, Andrew Fuerte, and Alex Bartohevich.

### I. Introduction

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, seeking compensatory and punitive damages for the tragic and preventable death of seventeen-year-old James Edward Stokes, Jr.

2.  On June 1, 2023, James Edward Stokes, Jr. was an occupant in a vehicle that was involved in a severe single-car collision in the City of Milwaukee.

3.  Following the crash, City of Milwaukee Police Officers and municipal personnel took exclusive custody and control of the vehicle, labeling it as evidence/contraband and towing it to a secured municipal impound lot.

4.  In an act of shocking and deliberate indifference, the responding City personnel failed to complete a basic search of the vehicle interior to clear it for trapped occupants.

5.  As a direct result, James Edward Stokes, Jr. was left abandoned, locked within the heavily damaged vehicle inside a secured City Tow Lot under the summer sun.

6.  James Edward Stokes, Jr. was discovered deceased four days later, on June 5, 2023, when the vehicle's owner entered the lot to recover personal effects.

## II. Jurisdiction and Venue

7.  This Eastern District of Wisconsin has subject-matter jurisdiction over Plaintiff's federal constitutional claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)-(4), as the action is brought to redress the deprivation of rights secured by the United States Constitution.

8.  Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside or operate within this

judicial district, and a substantial part of the events and omissions giving rise to the claims occurred within this district.

### III. Parties

**A.      The Plaintiff**

9.      Plaintiff Estate of James Edward Stokes (the "Estate") is the Estate for James Edward Stokes, Jr.  James Edward Stokes, Jr. died in the City and County of Milwaukee, Wisconsin.  Kina King is the Special Administrator for the Estate.

10.      Kina King ("King") is the mother of James Edward Stokes, Jr.  She resides in City and County of Milwaukee, Wisconsin.

**B.      The Defendants**

11.      Defendant City of Milwaukee ("City of Milwaukee") is a municipal corporation organized and existing under the laws of the State of Wisconsin. The City operates, funds, and manages the City of Milwaukee Police Department ("MPD") and the City of Milwaukee Tow Lot ("Tow Lot"), and is responsible for the policies, customs, and training of its personnel.

12.      Defendant Peter Knox ("Knox") is, and at all times relevant was, the manager of the City of Milwaukee's Tow Lot located at 3811 West Lincoln Avenue in the City of Milwaukee. In that capacity, he is the final policy maker for the City of Milwaukee Tow Lot. Knox oversees Tow Lot policies and day-to-day practices, including vehicle intake, storage, and inspection. At all relevant times, he was

acting under color of law and within the scope of his employment as Tow Lot manager. He is sued in his individual capacity.

13. Defendant Jeffrey Norman ("Chief Norman") is, and at all times relevant was, the Chief of Police for the City of Milwaukee. In that capacity, he is the final policymaker for the City of Milwaukee Police Department ("MPD"). Chief Norman oversees officer training, crash-scene protocols, search-before-tow requirements, vehicle inventory procedures, and coordination with the City's tow lots. At all times relevant to this complaint, Chief Norman was acting under color of state law and within the scope of his official duties. He is sued in his individual capacity.

14. Defendant Shane T. Doughty ("Officer Doughty") is, and at all times relevant was, a police officer for the City of Milwaukee. On June 1, 2023, Officer Doughty documented significant interior blood and crash damage and physically cut out blood-stained airbags from inside the vehicle for evidence. At all times relevant to this complaint, he was acting under color of law and within the scope of his employment. He is sued in his individual capacity.

15. Defendant Brett Stegerwald ("Officer Stegerwald") is, and at all times relevant was, a police officer for the City of Milwaukee. On June 1, 2023, Officer Stegerwald arranged for the crash vehicle to be towed under Tow No. 2342490, without first ensuring the vehicle had been fully cleared of occupants. At all times relevant to this complaint, he was acting under color of law and within the scope of his employment. He is sued in his individual capacity.

16.     Defendant Andrew Fuerte ("Officer Fuerte") is, and at all times relevant was, a police officer for the City of Milwaukee. On June 1, 2023, Officer Fuerte participated in the assessment and securing of the vehicle prior to impoundment. At all times relevant to this complaint, he was acting under color of law and within the scope of his employment. He is sued in his individual capacity.

17.     Defendant Alex Bartoshevich ("Officer Bartoshevich") is, and at all times relevant was, a police officer for the City of Milwaukee. On June 1, 2023, Officer Bartoshevich participated in the assessment and securing of the vehicle prior to impoundment. At all times relevant to this complaint, he was acting under color of law and within the scope of his employment. He is sued in his individual capacity.

## IV. Facts

18.     On June 1, 2023, at approximately 6:04 p.m., a white 2021 Kia Sportage in which James Edward Stokes, Jr. was a passenger was involved in a severe single-vehicle crash, striking a pole or tree at or near 9000 West Fond Du Lac Avenue in Milwaukee, Wisconsin.

19.     The vehicle suffered catastrophic damage, including a shattered windshield, blown tires, and significant structural intrusion into the rear passenger-side door.

20.     Milwaukee Police Department personnel and emergency responders arrived at the scene.

21. Despite clear and obvious indicators of an extreme, high-impact collision—including visible "blood spatter" on the interior ceiling towards the middle and rear of the vehicle roof—the responding MPD officers and crash reconstruction personnel failed to inspect the third-row seating area.

22. Responding personnel failed to look through the windows or clear the interior, completely missing the fact that James Edward Stokes, Jr. remained inside the vehicle.

23. Lanail Lee and other citizen witnesses told officers to check for a body in the car but the officers ignored them.

24. Instead, the defendant officers ordered the vehicle impounded, took exclusive control of the vehicle, and had it towed away by a City-operated or City-contracted tow truck to the City of Milwaukee Tow Lot located at 3811 West Lincoln Avenue in Milwaukee.

25. The vehicle was placed in slot P054 of the secured municipal lot. Neither the towing operators nor the lot attendants inspected the cabin of the vehicle upon arrival or placement.

26. For four consecutive days, from June 1, 2023, through June 5, 2023, the vehicle sat in the exclusive custody of the City of Milwaukee.

27. Because the vehicle was in a secured municipal compound, members of the public and the decedent's family were entirely barred from accessing or inspecting it.

28. On June 5, 2023, the owner of the vehicle arrived at the City Tow Lot to retrieve personal items.

29. Upon opening the vehicle, the owner immediately observed a human foot hanging over the second-row seating from the third row.

30. Investigators from the Milwaukee County Medical Examiner's Office responded to the scene and pronounced James Edward Stokes, Jr. deceased at 1:05 p.m. on June 5, 2023.

31. The Medical Examiner found advanced signs of decomposition, including skin slippage and bloating, consistent with being trapped in an unventilated vehicle container for days.

32. The Medical Examiner detailed that James suffered a 0.5 cm right cheek laceration, dorsal hand abrasions, and subcutaneous soft tissue hemorrhaging across the upper chest and back.

33. Crucially, the autopsy confirmed the absence of any natural disease or acute, instantly fatal internal traumatic injuries (such as an aortic rupture or skull fracture).

34. James Edward Stokes Jr. was left alive, incapacitated, or slowly dying of a combination of chemical ingestion, environmental exposure, lack of medical care, and positioning while trapped in the third-row seating.

35. The Medical Examiner's examination does not show sudden or instantaneous death.

36. The Medical Examiner's examination shows that James Edward Stokes Jr. survived the initial impact of the crash on June 1, 2023, and was subsequently towed away by ACT while still alive or slowly expiring inside the wreckage.

37. As a direct result of ACT's failure to perform a basic physical check or safety clearance of the vehicle's passenger cabin, the decedent was deprived of any opportunity for rescue, emergency medical intervention, or extraction, resulting in prolonged suffering inside the vehicle while it sat in Slot P054.

38. During a Public Works Committee Meeting on June 28, 2023, Knox stated that a person has "very little time" to survive.

39. Knox also said, "We have to have a more straight process with MPD … because you run the risk … because it may not be discovered immediately."

40. Knox also said, "The solution is before it gets to the Tow Lot."

41. This was not the first time City of Milwaukee police and tow lot employees left a person in a towed vehicle.

42. In November 2018, a four-year-old child, F.K., was transported to the City Tow Lot inside a vehicle and remained there overnight in freezing temperatures.

43. As in this case, police officers failed to visually inspect the vehicle, even though the officers arrested F.K.'s mother for drunk driving and the other adult occupant told officers that another child was in the car.

44. As in this case, tow lot employees failed to visually inspect the vehicle and locked F.K. inside overnight.

## V. The Claims

### A: Count One Fourteenth Amendment Substantive Due Process (State-Created Danger)

45. Plaintiff realleges and incorporates the previous paragraphs as though fully set forth herein.

46. Defendants Doughty, Stegerwald, Fuerte, and Bartoshevich acting under color of state law, used their authority to cut off private avenues of aid and create a unique, deadly danger to James Edward Stokes, Jr. that he would not have otherwise faced.

47. By seizing a heavily damaged vehicle containing a human being, failing to execute a basic structural clear, and towing it into a locked, inaccessible municipal facility, the Defendants Doughty, Stegerwald, Fuerte, and Bartoshevich isolated James Edward Stokes, Jr. from medical personnel, family searches, and civilian rescue.

48. Defendants Doughty, Stegerwald, Fuerte, and Bartoshevich knew or should have known that failing to clear a vehicle with rear cabin intrusion and ceiling blood spatter would result in an occupant being left to succumb to untreated injuries or environmental exposure.

49. The conduct of Defendants Doughty, Stegerwald, Fuerte, and Bartoshevich was egregious, arbitrary, and represented a total departure from standard police procedure, demonstrating a deliberate indifference to human life that shocks the conscience.

50. As a direct and proximate result of the individual Defendants Doughty, Stegerwald, Fuerte, and Bartoshevich's misconduct, James Edward Stokes, Jr. suffered extreme physical agony, dehydration, heat exposure, and subsequent death.

**B. Count Two: Municipal Liability for Failure to Train and Custom (Monell Claim)**

51. Plaintiff realleges and incorporates the previous paragraphs as though fully set forth herein.

52. The constitutional violations described above were the direct and proximate result of formal policies, practices, customs, or a failure to train maintained by City of Milwaukee.

53. City of Milwaukee failed to adequately train and supervise its police officers and crash reconstruction teams regarding basic scene management, vehicle inventory protocols, and vehicle clearance requirements prior to ordering municipal impoundment.

54. City of Milwaukee failed to adequately train, supervise, and implement standard operational policies requiring city Tow Lot employees and inventory clerks to visually clear passenger compartments before logging and locking away severely compromised vehicles.

55. The need for such training and clear protocols is highly obvious, and the absence of such safeguards underscores a custom of deliberate indifference by

the City of Milwaukee to the safety and Fourteenth Amendment rights of motor vehicle occupants.

56. As a direct and proximate result of the City of Milwaukee's unconstitutional policies, practices, customs, and failures to train, James Edward Stokes, Jr. was abandoned in municipal custody and died.

**C. Count Three: Supervisor Liability Under 42 U.S.C. § 1983**

57. Plaintiff realleges and incorporates the previous paragraphs as though fully set forth herein.

58. At all times relevant, Chief Norman acted as the supervisor, director, and final policymaker for the Milwaukee Police Department, with direct responsibility for the training, supervision, and discipline of Defendants Doughty, Stegerwald, Fuerte, and Bartoshevich.

59. At all times relevant, Knox acted as the supervisor, director, and final policymaker for the City of Milwaukee Tow Lot, with direct responsibility for the training, supervision, and operational protocols of Tow Lot employees and inventory personnel.

60. Defendants Chief Norman and Knox knew, or should have known, that their subordinates routinely failed to conduct basic, necessary physical and visual safety checks of heavily damaged vehicles prior to or upon impoundment.

61. Chief Norman and Knox had actual or constructive notice of a systemic, highly dangerous operational gap between the Milwaukee Police Department and the City Tow Lot regarding vehicle safety clearances.

62. Specifically, both supervisors had notice of a prior November 2018 incident wherein a four-year-old child, F.K., was locked inside a towed vehicle overnight because both police officers and tow lot employees failed to visually inspect the vehicle.

63. Despite this explicit notice that their subordinates were failing to clear vehicles—creating an obvious and deadly risk that incapacitated citizens would be trapped and abandoned inside the secured, inaccessible municipal compound—Chief Norman and Knox failed to enact mandatory, cross-departmental clearance protocols, failed to supervise compliance with basic search procedures, and acted with deliberate indifference to the severe risk of constitutional injury posed by their subordinates' conduct.

64. Knox explicitly acknowledged this known, unaddressed danger during a June 28, 2023, Public Works Committee Meeting, admitting that trapped occupants have "very little time" to survive, that a "more straight process with MPD" was required, and that the risk existed "because it may not be discovered immediately."

65. The failure of Chief Norman and Knox to properly supervise, train, and implement corrective protocols after the 2018 incident directly facilitated, approved, or turned a blind eye to the specific custom of deliberate indifference that led to James Edward Stokes, Jr. being abandoned to die.

66. The supervisory conduct, omissions, and deliberate indifference of Chief Norman and Knox were a direct and proximate cause of the violation of James

Edward Stokes, Jr.'s Fourteenth Amendment rights, resulting in his prolonged physical agony, extreme conscious pain and suffering, and subsequent death.

## VI. Relief Requested

67.     WHEREFORE, the Estate respectfully requests that this Court enter judgment in favor of the Estate and against Defendants, jointly and severally, granting the following relief:

    a. Compensatory damages in an amount to be determined at trial for James Edward Stokes, Jr.'s predeath pain and suffering, emotional distress, loss of life, and associated funeral expenses;

    b. Punitive damages against the individual defendants;

    c. Reasonable attorney fees, expert fees, and litigation costs pursuant to 42 U.S.C. § 1988; and

    d. Such other and further relief as this court deems just, proper, and equitable.

## VII. Jury Demand

68.     The Estate hereby demands a trial by jury on all issues and counts so triable in this action.

Date: June 5, 2026.                    Respectfully submitted,

*/s/ William F. Sulton*
WILLIAM F. SULTON

THE SULTON LAW FIRM LLC
2745 N. Dr. Martin Luther King Jr. Drive

[13 / 14]

Suite 202
Milwaukee, WI  53212
414-307-4693 (direct)
414-973-8844 (fax)
william@sultonlaw.com

*Counsel for Plaintiff*